Ralph NADER, Public Citizen, and
Center for Auto Safety,
Plaintiffs-Appellants,

v.

James R. SCHLESINGER, Secretary of
Energy, and the Department of
Energy, Defendants-Appellees.

No. DC–59.

Temporary Emergency Court of Appeals.

Argued July 24, 1979.

Decided Oct. 4, 1979.

Diane B. Cohn, Washington, D. C., with whom William B. Schultz, Washington, D. C., was on the brief, for plaintiffs-appellants.

Larry A. Boggs, Washington, D. C., with whom Sanford Sagalkin, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Dirk D. Snel, C. David Redmon and Gary W. Wilburn, Washington, D. C., were on the brief, for defendants-appellees.

Before HOFFMAN, MORGAN and BONSAL, Judges.

PER CURIAM:

Plaintiffs Ralph Nader, Public Citizen, and Center for Auto Safety, appeal from an order of the United States District Court for the District of Columbia granting summary judgment to the defendants James Schlesinger, Secretary of Energy, and the Department of Energy ("DOE").

Plaintiffs instituted this action on March 2, 1979 following DOE's adoption on March 1, 1979 of a regulation that permits refiners to add or "tilt" additional costs to the price of motor gasoline ("tilt regulation"). 44 Fed.Reg. 15600–15607 (March 14, 1979). Plaintiffs sought a declaratory judgment that the tilt regulation was invalid on the ground that the environmental impact statement, required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, was inadequate. The District Court granted summary judgment to defendants. This appeal followed. We affirm.

*Background*

The tilt regulation was adopted by DOE as an amendment to the Mandatory Petroleum Price Regulations, 10 C.F.R. part 212, to allow oil refiners in making motor gasoline sales to recover an additional amount of their total costs. The stated purpose of the tilt regulation is to "improve the investment climate for expansion or modification of refineries . . . and should therefore result in increased supplies of gasoline." Final Environmental Impact Statement, Motor Gasoline Deregulation and the Gasoline Tilt, Volume I at II–9.

The tilt regulation was first proposed on February 11, 1977. 42 Fed.Reg. 9675. Concurrently, DOE was considering a proposal to decontrol the price of gasoline ("decontrol regulation"), 43 Fed.Reg. 27995 (June 28, 1978), with respect to which it conducted public hearings and received comments.

On October 27, 1978, DOE issued its tilt regulation to take effect December 1, 1978, 43 Fed.Reg. 50386. On November 21, 1978, plaintiffs filed suit in the United States District Court for the District of Columbia challenging DOE's proposed tilt regulation on the ground that it was not accompanied by an environmental impact statement as required by NEPA. On December 8, 1978, DOE withdrew the tilt regulation and stated that it would prepare an environmental impact statement utilizing the draft environmental impact statement which had been prepared and publicized for comment with respect to the pending decontrol regulation. Therefore, the District Court dismissed plaintiffs' first action as moot on December 11, 1978.

In December, 1978 and January, 1979, plaintiffs and the Environmental Protection Agency ("EPA"), respectively, submitted comments to DOE on the draft environmental impact statement asserting that DOE's analysis contained insufficient information to assess in full the environmental impact of the proposed tilt regulation, and that DOE had underestimated the impact upon air quality. Both plaintiffs and EPA contended that the proposed tilt regulation would increase the price differential between leaded and unleaded gasoline, thus encouraging fuel switching from unleaded to leaded gasoline. Plaintiffs and EPA asserted that fuel switching destroys the effectiveness of catalytic converters and increases pollutant automobile emissions, thereby significantly affecting the quality of the human environment.

On January 29, 1979, DOE published its final environmental impact statement ("EIS"), which concluded that the tilt regulation would not have a significant environmental impact. This conclusion was based upon the observational studies referred to therein which were conducted by EPA and General Motors Corporation with respect to fuel switching. Another study by Sobotka and Co., Inc. ("Sobotka"), an EPA contractor, finding that an increase in fuel switching would result from the increase in price differential between leaded and unleaded gasoline was rejected as not sufficiently reliable.[1]

In early February, 1979, EPA questioned the EIS as unsatisfactory, and on March 1, 1979, made its objection to the Council on Environmental Quality. On the same day, however, EPA and DOE reached an agreement under which DOE would undertake further action, including limiting the price differential between leaded and unleaded gasoline, if the price differential reached the point where it might have significant adverse environmental consequences.[2] (Letter dated March 1, 1979 from David Bardin, Administrator of the Economic Regulatory Administration of DOE, to

---

1. The Sobotka study based its conclusion upon questions put to consumers on future fuel switching if the price differential between leaded and unleaded gasoline were to substantially increase.

2. On April 11, 1979, DOE announced a notice of proposed rulemaking and public hearing to consider the revision of the Mandatory Petroleum Price Regulations by adopting a proposed "Amendment to Unleaded Gasoline Price Rules." 44 Fed.Reg. 21651–21654. The proposed rule includes a proposed imposition of a mandatory price differential between leaded and unleaded gasoline.

Douglas Costle, Administrator of EPA.) Following the agreement, DOE adopted the tilt regulation, effective immediately.

Plaintiffs instituted this suit, their second action, against defendants on March 2, 1979 seeking a declaratory judgment that the EIS had failed to adequately assess the environmental impact of the proposed tilt regulation, as required by NEPA, and claiming that DOE had no data from which to conclude that the environmental impact would be insignificant.

On March 26, 1979, the District Court granted summary judgment in favor of defendants, holding that there was a rational basis for DOE's conclusion that the tilt regulation would not have a significant environmental impact.

Plaintiffs-appellants contend that DOE did not prepare an objective environmental impact statement as required by NEPA and did not have any basis to support its conclusion that the tilt regulation would not have a significant impact upon the environment. They argue that the tilt regulation will increase the price differential between leaded and unleaded gasoline, encouraging fuel switching, with the previously mentioned consequences to the environment.

DOE, on the other hand, contends that the EIS complies with NEPA and that it did consider the environmental consequences. Specifically, DOE argues that it considered the possibility of fuel switching in connection with the studies made by EPA, General Motors Corporation, and Sobotka. The observational studies made by EPA and General Motors Corporation indicate that an increased price differential between leaded and unleaded gasoline would not automatically result in fuel switching. Moreover, DOE argues that the tilt regulation will encourage refineries to produce more unleaded gasoline and that if the price differential between leaded and unleaded gasoline should reach the point where fuel switching would have an adverse effect on the environment, this would be met by the proposed rule limiting the price differential. Therefore, DOE takes the position that it has fully considered the potential adverse effects of the tilt regulation and that it did not act arbitrarily and capriciously.

*Discussion*

Section 102 of NEPA provides:

"The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

.　　.　　.　　.　　.

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. .　　.　　."

The EIS issued by DOE considered the environmental impact of the proposed tilt regulation, reaching the conclusion that it would not have a significant effect upon the environment.

■ The standard for review here is whether the EIS was reasonable and not arbitrary or capricious. Section 211(d)(1) of the Economic Stabilization Act of 1970, 84

Stat. 799, as amended, 85 Stat. 743, 749. Therefore, we must determine whether "there is a rational basis for the conclusions approved by the administrative body." *Texaco, Inc. v. Federal Energy Administration*, 531 F.2d 1071, 1077 (Em.App.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

 The District Court held that:
"there was a rational basis for the Department of Energy's primary reliance on the results of the Environmental Protection Agency's 'Fuel Switching Analysis' and the General Motors Corporation's 'Fuel Usage Survey' for its conclusion that the Mandatory Gasoline Tilt Regulations, 44 Fed.Reg. 15,600 (March 14, 1979), would not have a significant environmental impact . . . ."
We agree.

Moreover, if the effect of the tilt regulation is to increase the price differential between leaded and unleaded gasoline to the point where it may adversely affect the environment, DOE has proposed a rule limiting this differential so as to meet the adverse environmental effects.

Accordingly, the decision granting DOE's summary judgment is affirmed.